CASE 5—PETITION ORDINARY—MARCH 6.

# Highbaugh, &c., v. Hardin County, &c.

APPEAL FROM HARDIN CIRCUIT COURT.

1. DISCRETION OF FISCAL COURT IN ROAD IMPROVEMENTS—DISPOSI- TION OF SURPLUS FUNDS.—Under article 6, chapter 52, of Ken- tucky Statutes, which provides for the appropriation by the fiscal court of a county of surplus funds for the construction of turn- pikes upon application by citizens of a magisterial district, upon certain conditions, which have been complied with by the said citizens, the fiscal court has no arbitrary power in the premises; but it has a discretionary power in making such appropriations, and has the power to see that the fund is properly distributed and properly applied.

2. In this case the fiscal court properly refused to make the order for the construction of the turnpike, because it is manifest that it would, when finished, only benefit a few of the residents of the district, and a large majority of the voters and taxpayers in the district desired its proportion of the surplus fund appropriated to the improvement of such roads therein as would benefit the greatest number.

3. MANDAMUS.—The fiscal court of a county is in effect a legislative board, invested with the power by law of making appropriations in cases where the needs of the county require it, and it is beyond the power of a judicial tribunal to interfere and determine what improvements should be made, and the extent of the expendi- tures necessary, even though that board may neglect its duties, fail to improve the roads or make appropriations for that pur- pose.

HOBSON & O'MEARA for appellants.

1. The duty required of the fiscal court being mandatory, mandamus lies against it to compel compliance with the statute. In any view of the statute, the appellants were at least entitled to a hearing before the fiscal court. (Hoke v. Commonwealth, 79 Ky., 567; Commonwealth v. Boone County Court, 82 Ky., 632; Baldwin v. Shine, 84 Ky., 502; Cassidy v. Young, 92 Ky., 228; Kelley v. Toncy, 15 Ky. Law Rep., 718.)

2. The phraseology of the statute shows plainly that no discretion was intended to be left to the fiscal court in making the appropriation for the construction of a turnpike, upon the compliance with the conditions thereof by the citizens of the district.


J. H. VANMETER for appellees.

1. The action of a fiscal court in the appropriation of money for road purposes is a legislative and not a judicial act, and a mandamus will not lie to compel it to make a specific appropriation.

2. All the surplus funds in the county treasury had been appropriated by the fiscal court to the improvement of the county roads, and provisions made to have the work carried out, before appellants presented their petition, and asked the court to make an appropriation for the construction of the turnpike.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This is no case for a mandamus.

The appellants, some twenty or thirty in number, made application to the Hardin Fiscal Court for aid in the construction of a turnpike in Magisterial District No. 2 under the provisions of article 6 of chapter 52, Kentucky Statutes.

Section 1886 of that article gives plenary power to the fiscal court of any county in the State to appropriate any surplus money in its treasury to improving county roads, such as grading, graveling, building turnpikes, etc.

Section 1887 provides that "should any magisterial district or districts desire to unite in building a turnpike *it*

*shall be mandatory* on the part of the fiscal court to build the same, provided the citizens of the district shall have subscribed one-tenth of the cost of same, as estimated by the engineer," etc.

Section 1888 requires the money to be expended by the court in such a manner as that each district shall receive its *pro rata* as the assessed value of the property in the district bears to the entire county.

Section 1889 empowers that court to appoint three commissioners in each magisterial district, who shall let out the work in their districts to the lowest and best bidder, with the privilege of refusing all bids.

It seems the contemplated building of the turnpike was in good faith, and the applicants, citizens and taxpayers of the district in which the improvement was to be made.

The county of Hardin had a large surplus of money, and this general law seems to have been passed so as to enable that county to dispose of this surplus in the appropriation of the money to the improvement of its roads, but of course applies to all the counties in the State. The fiscal court re-fused to hear the motion or entertain the application for an appropriation of any part of this surplus fund on two grounds:

1st. Because the contemplated turnpike when completed, would benefit but few of the citizens of the district, and that a large majority of the voters and taxpayers desired its appropriation to the improvement of such roads within the district as would advance the interest of the greatest number.

2d. The court had already made appropriations and distributed the surplus funds then on hand by an order of its court in such a manner as produced that equality required by section 1888 of the act.

Prior to their application the court, by an order, appropri-
ated $108,000 to the improvement of the county roads, by
appointing commissioners, and directing 1hem to expend, as
they might deem to the best interest of each district, its pro-
portion of this surplus fund, and that Magisterial District
No. 2 was assigned $18,586.80, that being its *pro rata* part
of the surplus.

It seems that there are near five hundred voters in this
district, with near 3,000 inhabitants, and that about thirty
of the taxpayers are insisting upon having a turnpike built
at the place and in the manner they desire, while, on the
other hand, it is alleged that such action would be to the
great detriment of the remaining population and while
section 1887 provides that where magisterial district or dis-
tricts desire to unite in building a turnpike, it shall be man-
datory on the part of the court to build the same, provided
the citizens of the district shall pay one-tenth of the cost, it
by no means follows that all discretion is taken from the fis-
cal court, and that whenever a surplus exists a part of the
taxpayers can demand the *pro rata* of the district as a mat-
ter of right on their assuming to pay one-tenth of the cost
of the original construction of the pike, without regard to
its location or the benefits to be derived by those living
within the district from its construction.

The entire act shows a discretionary power in the fiscal
court when coming to dispose of this surplus fund, and
while this power is not arbitrary, if those who first apply
are entitled, then one part of the district might and could
appropriate all of its *pro rata* of the surplus in improving
the roads in which they were or are directly interested.

Under this general law the fiscal court has no power to
say we will withhold the money, and make no disposition
of the surplus for the improvement of roads, still it has the

power to see that the fund is properly distributed, and that going to each district applied in such a manner as will benefit the greater part of its population. The commissioners required to be appointed under the act may even reject all bids and refuse to build if, in their opinion, the cost is exorbitant, showing a plain purpose to leave with the fiscal court and its commissioners some supervising power over these expenditures.

In this case if a mandamus was the proper remedy, the appellants have not shown a failure on the part of the court to discharge its duties, but, on the contrary, the court has made the appropriation and the commissioners have charge of the fund, but in our view of this question the writ should not go for another reason. The fiscal court of every county is in effect a legislative board, invested with the power by law of making appropriations in cases where the needs of the county require it, and while they may neglect their duties or omit to improve its roads, or to make other appropriations necessary for that purpose, it is beyond the power of a judicial tribunal to interfere and determine what improvements should be made, and the extent of the expenditure necessary for that purpose; but giving to the statute in question the meaning attached to it by counsel for appellants, yet it is manifest there is a discretion as to the mode of expending this surplus, and the court is not compelled to appropriate in every instance where an application is made and the offer or ability to pay the ten per cent. on the part of the citizens unquestioned.

Judgment affirmed.